(January 28, 1909.)

CAMAS PRAIRIE STATE BANK, a Corporation, Respondent, v. H. E. NEWMAN, WILLIAM NEWMAN, H. E. NEWMAN, Jr., and G. C. NEWMAN, Partners Doing Business Under the Firm Name of H. E. NEWMAN & SONS, Appellants.

[99 Pac. 833.]

BANK CHECK—NATURE OF CONTRACT—VERDICT—SUFFICIENCY OF EVIDENCE.

1. A bank check is an instrument by which a depositor seeks to withdraw funds from a bank, and as between the drawer and the payee it is an evidence of indebtedness, and in commercial transactions, as well as in law, it is equivalent to the drawer's promise to pay, and an action may be brought thereon, as upon a promissory note.

2. The payee of a bank check may maintain an action against the drawer to recover the debt evidenced by such check upon the drawee refusing to pay the same.

3. Where a bank check is given for the purpose of procuring money with which to gamble, and the person to whom the check is given has knowledge that the same is to be used for such unlawful purpose, and cashes such check with that knowledge, he cannot recover the debt evidenced thereby, from the drawer of such check.

4. In a suit, by a payee of a bank check, to recover the debt evidenced thereby upon the drawee refusing to pay the same, and a defense is interposed by the drawer that the money advanced upon

such check was used for the purpose of gambling, and that the payee knew such fact at the time the check was cashed, the issue is one of fact to be determined by the jury, and the verdict of the jury will not be disturbed if the evidence supports the same.

5. Where a member of a partnership draws a check in payment of his personal obligations, or for a debt without and beyond the scope of the partnership, and the payee named in such check cashes the same without knowledge, either actual or constructive, that the check was drawn without authority, in an action by the payee to recover the debt evidenced by such check, the partnership cannot defend upon the ground that the member drawing such check had no authority to draw the same.

6. The payee of a bank check may look to the drawer thereof for its collection, and is not required to apply money in its hands on deposit in the name of an indorser, in payment of such check.

7. The evidence in this case examined, and, *held*, to support the verdict.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District, in and for Blaine County.    Hon. Edward A. Walters, Judge.

An action by the payee against the drawer to recover money upon a bank check.    Judgment for plaintiff.    *Affirmed.*

Stockslager & Bowen, for Appellants.

One partner is agent for the others for partnership purposes alone.    If one partner does an act for a purpose apparently not within the partnership purpose, the firm is not bound unless he had actual authority.    (22 Am. & Eng. Ency. 2d. ed., 144-146; *Cannon v. Lindsey,* 85 Ala. 198, 7 Am. St. Rep. 38, 3 South. 676; *Cavanaugh v. Salisbury,* 22 Utah, 465, 63 Pac. 39.)

And where a partner has authority to issue checks for partnership purposes, one who cashes such a check for the purpose of securing money with which to gamble cannot make the firm liable if the payee had knowledge or belief, or had notice, actual or constructive, of the purpose for which the check was issued.    (Story, Partnership, secs. 131, 132; 4 Am. & Eng. Ency., 3d ed., 176, 177; *Rocky Mt. Bank v. McCaskill,* 16 Colo. 408, 26 Pac. 821.)

"When such facts or circumstances are known to a person in relation to the matter in which he is interested as are sufficient to make it his duty, as an honest and prudent man, to inquire concerning the rights of other persons in the same matter, and the course of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, the general rule is that he will be held chargeable with notice of all that he might have thus discovered, etc." (21 Am. & Eng. Ency. 584, and cases cited; *Tucker v. Constable*, 16 Or. 407, 19 Pac. 13; *Schnavely v. Bishop*, 8 Kan. 301, 55 Pac. 667; *Mackey v. Fullerton*, 7 Colo. 556, 4 Pac. 1198.)

The mere fact that testimony might be impeaching or cumulative will not warrant refusal of a new trial if it has sufficient probative value to affect the result. (Spelling, New Trial and App. Pr., secs. 226, 227.)

Sullivan & Sullivan, for Respondent.

In trading partnerships, a partner has implied authority to draw notes and checks for partnership purposes. (22 Ency. Law, 151; 4 Ency. Law, 176; *First National Bank v. Grignon*, 7 Ida. 646, 65 Pac. 368.) The presumption is, that a note or check issued in the firm name by one of the partners is a partnership transaction. (4 Ency. Law, 176.) A partnership dealing in cattle or sheep is a trading partnership. (22 Ency. Law, 61, 62.)

Negotiable instruments given for a gaming consideration are valid in the hands of a *bona fide* purchaser. (*Haight v. Joyce*, 2 Cal. 65, 56 Am. Dec. 311.)

"Any knowledge of parties' crookedness will not defeat *bona fide* purchaser. It would be almost impossible for business of banking to be carried on if it was incumbent that the bank officers, whenever negotiable paper was offered to it, inquire into whether any of the parties to be charged were crooked in their business methods." (*Setzer v. Deal*, 135 N. C. 28, 47 S. E. 466; Randolph on Com. Paper, secs. 1000, 1001; *American Ex. Nat. Bk. v. New York B. Co.*, 148 N. Y.

698, 43 N. E. 168; *Bedell v. Burlington Nat. Bk.,* 16 Kan. 130.)

When a partnership is engaged in business in which use of commercial paper is appropriate, the firm is liable upon such paper, in the hands of a *bona fide* holder, when issued in the firm name of one of its members, although it may have been issued for his own individual use or in fraud of the partnership. (*Sondheim v. Gilbert,* 117 Ind. 71, 18 N. E. 687, 10 Am. St. Rep. 23, 5 L. R. A. 32; *Hawes v. Dunton,* 1 Bail. 146, 19 Am. Dec. 663; *National Ex. Bk. v. White,* 30 Fed. 412; *Rich v. Davis,* 4 Cal. 22; *Pease v. Cole,* 53 Conn. 53, 55 Am. Rep. 57-59, 22 Atl. 681; *Rice v. Bank of Camas Prairie,* 5 Ida. 39, 47 Pac. 856.)

Subsequent discovery of the importance of evidence in the possession of a party does not render it newly discovered but discloses negligence. (14 Ency. Pl. & Pr. 797, note 4, and cases cited; Hayne, New Trial & Appeal, sec. 89; *Berry v. Metzler,* 7 Cal. 18; *County of Sonoma v. Stofen,* 125 Cal. 32, 57 Pac. 681.)

STEWART, J.—The facts in this case are out of the ordinary of business transactions. On July 1, 1907, H. E. Newman, Jr., a member of the firm of H. E. Newman & Sons, drew a check on the First National Bank of Shoshone, Idaho, payable to the order of the Camas Prairie State Bank, for the sum of $500, and the Camas Prairie State Bank cashed said check and paid to H. E. Newman, Jr., the amount stated therein, $500. The Camas Prairie State Bank presented such check to the First National Bank of Shoshone, which declined to pay the same. This action is based upon such check, in which the plaintiff, the payee of said check, brings this action to recover from H. E. Newman & Sons the amount paid upon said check.

The answer of the defendants admits that H. E. Newman, Jr., drew such check, and that the plaintiff cashed the same, and that it was presented to and not paid by the First National Bank of Shoshone. The defense made by H. E. Newman & Sons is that the check was drawn by H. E. Newman,

Jr., for the purpose of obtaining money with which to gamble contrary to the laws of this state, being drawn for his own individual purpose and not within the scope of the partnership, and that H. E. Newman, Jr., did not have the right or authority to draw such check, and that the plaintiff had reason to know and believe, and did know and believe, that said check was issued for such purpose, and without the authority of said H. E. Newman, Jr., to draw the same.

It is also alleged in the answer that the check was executed for the purpose of obtaining money with which to gamble with one Lee Mink, contrary to law, and at the solicitation of said Lee Mink, and that when the check was drawn and presented to the plaintiff, that the plaintiff required said Mink to indorse said check, which was done accordingly, and at the time the same was drawn the plaintiff had in its possession money of said Mink more than sufficient to pay said check, and which could have been applied in the payment of the same, but which was not done, although plaintiff knew that the money so obtained from the plaintiff on said check was to be used in gambling with said Mink, and was lost to him in gambling, and that plaintiff wilfully and fraudulently conspired with said Mink, and refused to apply the money in its hands for the payment of said check, although having the right and power so to do.

Upon the issues thus presented, the cause was tried to a jury, which returned a verdict for the plaintiff for the amount sued for. This appeal is from the judgment and from an order overruling a motion for a new trial.

It is admitted by the evidence in this case that H. E. Newman, Jr., was a member of the firm of H. E. Newman & Sons; that Newman, Jr., drew the check in controversy and the plaintiff cashed the same; that H. E. Newman, Jr., received the amount named in such check, to wit, $500, from the plaintiff. It also further appears that H. E. Newman, Jr., had been gambling with one Lee Mink and had lost the sum of $300, and had drawn checks for such sum upon the First National Bank of Shoshone payable to the order of Lee Mink, signed the same in the same amount as the check in contro-

versy, and that after drawing the check in controversy, the three checks drawn in favor of Lee Mink were taken up and paid with the money received from the plaintiff upon the check in controversy, and that thereafter H. E. Newman, Jr., continued to gamble until he had lost the balance of the money received from plaintiff. These facts are testified to by H. E. Newman, Jr.

Thus the facts in this case are rather out of the ordinary, as it is clearly shown by the evidence of H. E. Newman, Jr., that he was engaged in violating the laws of this state in gambling, and that the money paid upon the check in controversy was used for such illegal and unlawful purposes. In this connection it may be well to observe that it was the duty of the trial court, and we assume that the trial court performed this duty, to direct that the parties engaged in such unlawful business, as shown by the evidence in this case, should be prosecuted for such offense and dealt with as provided by the laws of this state.

Under the law a check is an instrument by which a depositor seeks to withdraw funds from a bank. As between the drawer and the payee it is an evidence of indebtedness. Usually a check is given for money borrowed or a debt contracted, and in commercial transactions as well as in law it is equivalent to the drawer's promise to pay and an action may be brought thereon as upon a promissory note. (1 Morse on Banks and Banking, sec. 388.) The check then in controversy in this case was an obligation on the part of H. E. Newman & Sons to pay a debt to the plaintiff, and when payment was declined by the drawee, the plaintiff had a right of action to recover the debt of which such check was a mere evidence. If the check was given for the purpose of procuring money with which to gamble, and the plaintiff was a party to such transaction and cashed the check with the knowledge that it was to be used for such unlawful purpose, the plaintiff cannot recover, as the courts will not lend their aid or assistance in violation of the laws of this state, or to aid or abet in the commission of crime. (20 Cyc. 939.)

This question, however, was an issue of fact to be tried and determined by the jury under proper instructions, and in this case having been submitted to the jury and they having determined that matter against the contention of respondents, their verdict will not be disturbed unless it is not supported by the evidence. From an examination of the evidence, we think it clearly appears that while the money procured upon said check was used and lost by H. E. Newman, Jr., gambling, yet it also appears that the plaintiff had no knowledge at the time the check was cashed as to the purpose for which the money was to be used, and that the evidence clearly supports the verdict of the jury upon this question. It is also argued that inasmuch as the check was drawn by H. E. Newman, Jr., for purposes outside of and beyond the scope of the partnership business of H. E. Newman & Sons, that for that reason the plaintiff cannot recover in this action. The check, however, appears regular upon its face and it is admitted that H. E. Newman, Jr., had authority to issue checks in the name of H. E. Newman & Sons, and when the check was so issued, unless the plaintiff was advised or knew that the check was drawn for a purpose outside and beyond the scope of the partnership, the right to recover thereon will not be denied the plaintiff, and upon this question the verdict of the jury is conclusive, and we are satisfied the evidence is sufficient to support the verdict.

It is next argued that inasmuch as Lee Mink indorsed such check, and the drawee refused to pay the same, and as the plaintiff was then advised of the purpose for which the check was drawn, it was the duty of the plaintiff to have applied money then in the bank on deposit in the name of Lee Mink in the discharge of such check and indebtedness, and that the plaintiff, upon failure to so apply the deposit of Lee Mink, cannot recover from the defendants. The trouble, however, with this contention is that the knowledge obtained by plaintiff, with reference to the purpose for which the money was to be used, was obtained after the transaction was closed, and after the plaintiff had paid to Newman, Jr., the amount of said check. The liability of the defendants to the plain-

tiff must be determined from the conditions as they existed at the time the plaintiff cashed such check, and after the check was cashed, it became a debt of the defendants, and the plaintiff had a right to rely upon the defendants to pay the same, even though plaintiff might also have recovered the amount of such indebtedness from Mink by reason of his being an indorser. The fact that Mink was an indorser would not require the plaintiff to look to him to pay the indebtedness. The plaintiff in law could look to the drawer of such check, as the maker of the original obligation, and there is no principle of law which imposed upon the plaintiff the necessity of applying money in its hands upon deposit in the name of Lee Mink in the discharge of such obligation, and certainly the facts did not require it.

It is also contended that the trial court erred in denying the defendant the right to show that previous to the time the check was cashed by plaintiff that H. E. Newman, Jr., had been drinking, and was intoxicated at the time the check was cashed. Whether Newman had been drinking previous to the time the check was cashed is certainly immaterial, and whether his condition was such at the time the check was cashed, as to make him liable upon a contract made by him, is a matter of defense which is not set forth in the answer in this case or plead as a defense. If Newman, Jr., was incapable by reason of intoxication from making the contract or entering into the obligation to pay plaintiff the money received upon the check, such facts should have been plead as a defense, and cannot be proven under the plea, that the money was advanced for gambling purposes with knowledge on the part of the plaintiff of the use to which such money was to be applied.

It is next urged that the court erred in not granting a new trial upon the ground of newly discovered evidence. The showing, however, is insufficient, for the reason that it does not show diligence, but, on the contrary, shows that what is claimed as newly discovered evidence was in the possession and knowledge of the defendants at the time of the former

trial. This is not newly discovered evidence. (12 Ency. Pl.
& Pr. 804.)

There are some other questions presented by the record but
which we do not deem of sufficient importance to discuss in
detail. We find no error in this record, and believe that the
verdict of the jury is fully supported by the evidence. The
judgment is *affirmed.* Costs awarded to the respondent.

Ailshie, J., concurs.