DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

[OCTOBER TERM, 1912.]

## BROWN v. COW CREEK SHEEP COMPANY.
### (No. 689.)

BILLS AND NOTES—PLEADING—WRITTEN INSTRUMENTS FOR THE UN-
CONDITIONAL PAYMENT OF MONEY ONLY—CHECKS—UNCONDITIONAL
PAYMENT—MEMORANDA—LIABILITY OF DRAWER—COUNTERMANDING
PAYMENT—BANKS AND BANKING.

1. To make applicable Section 4406, Compiled Statutes 1910,
providing that it shall be sufficient in an action on an in-
strument for the unconditional payment of money only to
set forth a copy of the instrument, and to state that there
is due to the plaintiff on such instrument, from the adverse
party, a specified sum, which he claims with interest, the
instrument must be one for the unconditional payment of
money only, but it is not essential that it be negotiable.

2. In an action upon an instrument for the unconditional pay-
ment of money only, instead of pleading the legal effect
and the other facts necessary in such case, it is sufficient
under Section 4406, Compiled Statutes 1910, to set forth
a copy of the instrument, and state that there is due to
the plaintiff on such instrument from the adverse party, a
specified sum, which he claims, with interest, stating also,
if others than the makers of a promissory note or the ac-
ceptors of a bill of exchange are parties, the facts which fix
their liability; and it is unnecessary in a pleading under

said section in an action upon such an instrument to aver consideration for the promise or order, whatever may be necessary as to the proof.

3. Where a check for a sum certain, payable to the order of a payee named, contained the additional words: "For Wilkes," and the following at the bottom of the check: "This check may not be paid unless object for which drawn is stated," and the check was signed in the name of a corporation by a person named, *held,* that the words "For Wilkes" did not import that the check was drawn otherwise than upon the general personal credit of the drawer, but, on the contrary, was merely a statement of the object for which the check was drawn, or the person or account to which the amount was to be charged, and did not impress upon the check any element of contingency or condition as to payment.

4. A statement in or upon a bill, note, or check indicating the consideration or account to be charged with the amount, does not render the payment, promise, or order conditional or affect the negotiability of the instrument, there being a clear distinction between such a statement and an order or promise to pay out of a particular fund; such distinction being usually recognized in statutes defining negotiable instruments, and in the statute of this state by the provision that an order or promise to pay out of a particular fund is not unconditional, but that an unqualified order or promise to pay is unconditional, though coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, or a statement of the tranaction which gives rise to the instrument. (Comp. Stat. 1910, Sec. 3161.)

5. Where a check for a sum certain, payable to the order of a payee named, contained the additional words: "For Wilkes," *held,* that the direction contained in the instrument was not to pay out of a particular fund, as distinguished from an order upon the general credit of the drawer.

6. A "check" is usually defined to be a draft or order upon a bank for the payment, at all events, of a certain sum of money to a person or his order, or to bearer, and payable on demand; it is an evidence of indebtedness, and, as between drawer and payee, is equivalent to the drawer's promise to pay, although the latter may not be bound absolutely until payment has been duly demanded of the bank and refused.

7. An action may be brought upon a check by the holder against the drawer to recover the amount thereof.

8. The payment of a check may be stopped or countermanded at any time before it is actually presented and paid; but in doing so the drawer assumes the consequences of his act.

9. A check for a sum certain, payable to the order of a payee named, signed in the name of a corporation by a person named, contained the words in the body of the check: "For Wilkes," and also at the bottom of the check the following: "This check may not be paid unless object for which drawn is stated." *Held,* that, conceding the effect of the memorandum to be, as contended, to require that the object be stated, when the memorandum was complied with, the instrument, if otherwise in proper form and unqualified, would be a check, and necessarily an instrument for the unconditional payment of money, though subject to such defenses as may properly be interposed in a suit upon any instrument of that character in the hands of the one suing upon it; and that the words "For "Wilkes" were to be regarded as having been written in the check for the purpose of stating the object.

10. Any form of statement, however brief and indefinite, informing the drawer as to the matter, would be a sufficient compliance with a memorandum at the bottom of a check stating that the check may not be paid unless object for which drawn is stated.

11. As a general rule a bank is not bound to take notice of memoranda upon the margin or in the body of the check placed there for the convenience of the drawer.

12. A check for a sum certain, payable to the order of a payee named, signed in the name of a corporation by a person named, contained the words: "For Wilkes," and the following at the bottom of the check: "This check may not be paid unless object for which drawn is stated." *Held,* that the words "For Wilkes" was a sufficient statement of the object to have authorized the payment of the check by the bank on which it was drawn, and that the check on its face was an instrument for the unconditional payment of money only, within the meaning of the Negotiable Instruments Act (Comp. Stat. 1910, Secs. 3284, 3343), defining a bill of exchange and a check, authorizing, in an action upon the check, the short form of pleading prescribed by Section 4406, Compiled Statutes, 1910.

[Decided October 7, 1912.]                    (126 Pac. 886.)

ERROR to the District Court, Carbon County; HON. DAVID H. CRAIG, Judge.

The action was by Ed Brown against the Cow Creek Sheep Company upon a check signed in the name of the company for the sum of $2,500. A general demurrer to the petition was sustained, and the plaintiff elected to stand upon the petition as filed. Judgment was rendered for the defendant for costs. The plaintiff brought error. The material facts are stated in the opinion.

. *N. R. Greenfield,* for plaintiff in error.

Under the Negotiable Instruments Act (Comp. Stat. 1910, Secs. 3159, 3161), an indication of a particular fund out of which reimbursement is to be made, or a particular account which is. to be debited with the amount does not render the instrument conditional or non-negotiable. The distinction made by the decisions and by the Negotiable Instruments Act between instruments payable out of a particular fund and those which refer to such fund for reimbursement is close, but logically sound. It is clear that an instrument payable out of a particular fund is not payable "in any event," but depends for payment on the existence of the fund, and its sufficiency at the time fixed for payment. The true test is: Does the instrument carry the general personal credit of the drawer or maker, or only the credit of a particular fund? (4 Ency. L. (2nd Ed.) 89.) The check in controversy imports on its face a personal indebtedness in the sum named from the Cow Creek Sheep Company to Ed Brown, and is an absolute direction to the bank to pay that sum to Brown, or his order, at all events, without condition or limitation. It is drawn upon the general personal credit of the company, and not upon the credit of a particular fund, and it is not conditioned upon the sufficiency of any fund. In this state, where a large amount of business is transacted by agents of corporations upon the open range in dealing with live stock, checks of this character are almost invariably used, not for

the purpose of designating a particular fund for payment, but that the principal may be advised from an inspection of the check of the transaction giving rise to the debt, and thereby enabled to make proper charges and credits upon the books. All such checks are drawn upon the general fund of the drawer on deposit at the bank. It is desirable and necessary that checks given upon the open range should be negotiable and have all the attributes of negotiable paper. The rule defining the requisites of negotiable instruments, though now declared by statute, is subject to a reasonable construction. It requires a strained construction and interpretation of the check in question to say that it is drawn upon a particular fund. The notation on the check is for the benefit of the drawer and not for the benefit or protection of the bank. The bank is fully protected upon paying such a check whether the principal is indebted to the payee named in the check or not. The check itself imports such indebtedness.

The memorandum upon this check stating that it may not be paid unless object for which drawn is stated, does not affect the character of the instrument. The "object" for which the check is drawn must be stated in all instances. The object of the present check was the payment of the amount named by the bank to the plaintiff out of the general fund or credit of the drawer at the bank. If that is not so, and it was necessary that there be some other statement of the object, then the words "For Wilkes" were sufficient as a statement of such object. The following cases support the contention that the instrument sued upon is negotiable: Bank v. Lightner, 74 Kan. 736, 88 Pac. 59; 118 Am. St. 353; 8 L. R. A. (N. S.) 231; Schmittler v. Simon, 101 N. Y. 554, 5 N. E. 425, 54 Am. Rep. 737; Corbett v. Clark, 45 Wis. 403, 30 Am. Rep. 763; Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108; Siegel v. Bank, 131 Ill. 569, 23 N. E. 417, 19 Am. St. Rep. 51, 7 L. R. A. 537; Buchanan v. Wren, 10 Tex. Civ. App. 560, 30 S. W. 1077; Kirk v. Ins. Co., 39 Wis. 138, 20 Am. Rep. 39; Newton

Wagon Co. v. Diers, 10 Neb. 284, 4 N. W. 995; Bank v. Michael, 96 N. C. 53, 1 S. E. 855; Taylor v. Curry, 109 Mass. 36, 12 Am. Rep. 661; Collins v. Bradbury, 64 Me. 37. · If it should be conceded that the check is not negotiable, nevertheless the petition states sufficient facts. (Comp. Stat. 1910, Sec. 4406; Frontier Supply Co. v. Loveland, 15 Wyo. 317; Sargent v. R. R. Co., 32 O. St. 449; Prindle v. Caruthers, 15 N. Y. 425; Swan's Pl. & Prac., pp. 184, 186; Scrock v. Schneider, 29 O. St. 499; 1 Bates' P. P. & F. 203-206; 2 id. 1052, 1051-1075; Gage v. Roberts, 12 Neb. 276, 11 N. W. 306; Stubendorf v. Sonnenschein, 11 Neb. 237, 9 N. W. 91; Collinwood v. Merchants Bank, 15 Neb. 118, 17 N. W. 359; Barnes v. Van Keuren, 31 Neb. 165, 47 N. W. 848; Scott v. Esterbrooks, 6 S. D. 253, 60 N. W. 850; Watson v. Barr, 37 S. C. 463, 16 S. E. 188; Strunk v. Smith, 36 Wis. 631; Dugan v. Campbell, 1 Ohio, 119.)

*George E. Brimmer,* for defendant in error.

It is conceded that it is the general custom of sheep corporations in this section of the country to have orders issued by their agents in the form employed by the defendant company, for the purpose of advising the principal of the transaction giving rise to the order upon a mere inspection of it. The form having been prepared for that purpose, it is manifest that the memoranda upon the order does not state the transaction giving rise to the debt, and does not enable the principal to debit a particular account with the amount. Whenever the payment of a check or order is based upon a condition or contingency it is not negotiable. The cases cited by counsel for plaintiff in error as supporting his proposition that the check is negotiable are not applicable for the reason that the instrument considered was much different from that in the case at bar. Where the instrument upon which suit is brought provides for payment upon a contingency which may never happen, Section 4406 does not apply.

A petition upon an instrument not negotiable must aver consideration. (Bank v. Cable, (Conn.) 48 Atl. 428; 8 Cyc. 110; 3 Ency. Forms, 4090; 1 Abbott's Tr. Br. on Pl. 332.) A petition upon an instrument which is payable out of a particular fund must aver the existence of the fund. (Thompson v. Merc. Co., 10 Wyo. 86; 8 Cyc. 136.) The order sued upon required payment out of a particular fund. (Thompson v. Merc. Co., supra; 4 Ency. L. (2nd Ed.) 87, 88, 89 and notes; Woodward v. Smith, (Wis.) 80 N. W. 440; Ehrichs v. DeMill, 75 N. Y. 370; Munger v. Shannon, 61 N. Y. 251; 11 Eng. & Am. Ann. Cas. 601-603.)

It was intended by the direction upon the check that the object must be stated to make it obligatory upon the agent signing the check to definitely set forth the particular purpose for which the order was drawn, so that payment might be refused by the bank in the event that the order was not drawn for company purposes, and to indicate to the bank the fund from which payment should be made. By implication, if not expressly, this order states that it was given to pay money owing or coming to John Wilkes. Unless the amount was owing to Wilkes, the order would not be payable, even though it had been accepted generally.

The check was based upon a contingency or condition, and is, therefore, not negotiable. (White v. Cushing, (Me.) 34 Atl. 164; Benedict v. Cowden, 49 N. Y. 396; Bank v. McCord, (Pa.) 21 Atl. 143; Stebbins v. R. R. Co., 2 Wyo. 71.) With reference to the direction upon the check for stating the object, see 1 Daniel Neg. Instr. (4th Ed.), Secs. 149, 150. The order was conditional upon a compliance by the drawer with the absolute requirements of the direction upon the check. Without such compliance the order was incomplete and uncertain, and the words "For Wilkes" instead of stating the object, merely indicated a special fund for payment.

POTTER, JUSTICE.

In the District Court a general demurrer to the petition filed in this case was sustained, and an exception was taken to that ruling. Thereupon, the plaintiff not desiring to further plead, but electing to stand upon the petition as filed, judgment was rendered in favor of the defendant for costs. The plaintiff brings the case here on error, assigning as error the ruling upon the demurrer and the entering of judgment for the defendant thereon.

The action was brought upon a check by the plaintiff as the payee named therein against the defendant as the drawer thereof. The petition alleges that the defendant is a corporation organized and existing under the laws of the State of Wyoming; that on the 23rd day of January, 1909, the defendant, by John Wilkes, its authorized agent, drew and delivered to the plaintiff a check in writing of that date, of which the following is a copy, with all credits and endorsements thereon:

No. 81.

FIRST NATIONAL BANK

RAWLINS, WYO., Jan. 23, 1909.

Pay to the order of Ed Brown $2,500 oo/oo twenty-five hundred dollars.

For Wilkes.

COW CREEK SHEEP COMPANY.

By JOHN WILKES.

This check may not be paid unless object for which drawn is stated.

Following the copy of the check thus set out in the petition, it is alleged that the check was duly endorsed by plaintiff, and so endorsed was by plaintiff duly presented to the said First National Bank of Rawlins, Wyoming, for payment, but was not paid for the reason that the defendant countermanded the payment thereof and instructed said bank not to pay or honor said check; that "plaintiff is still the holder and owner of said check and no part thereof has been paid,

and there is now due the plaintiff thereon from the defendant the sum of two thousand five hundred ($2,500.00), with interest on said amount at 8 per cent per annum from the 23rd day of January, 1909." These allegations are followed by a prayer for judgment in the sum of $2,500, together with costs and such other relief as may be proper in the premises.

The objections urged against the petition present the question whether the check upon which the action is founded is either a negotiable instrument or one for the unconditional payment of money, it being contended in support of the demurrer and the ruling thereon that the check is not such an instrument, and that the petition is therefore insufficient for the failure to aver consideration, and, further, that the check was drawn upon and payable out of a particular fund, making it necessary that the petition should allege in addition to the facts therein stated not only the fact of consideration, but also the existence of the particular fund from which the check was payable. The objections are based upon the words contained in the check, "For Wilkes," and the other words, apparently in the lower left hand corner, "This check may not be paid unless object for which drawn is stated." It is argued by counsel for defendant that the words "For Wilkes" constitutes the instrument an order payable out of a particular fund, and therefore not negotiable or unconditional; that the words above quoted indicating that the check may not be paid unless the object for which it is drawn is stated also operate to make the payment conditional, at least in the absence of a statement in definite terms of the object for which the check is drawn; and that the words "For Wilkes" do not amount to a sufficient statement to destroy the conditional effect of the requirement that the object be stated.

It is contended, on the other hand, that the check set out in the petition is an instrument for the unconditional payment of money, and that whether it is negotiable or not, though counsel deems it to be negotiable, the petition is suf-

ficient under Section 4406, Compiled Statutes, which provides as follows: "In an action, counterclaim or set-off founded on an account or upon an instrument for the unconditional payment of money only, it shall be sufficient for a party to set forth a copy of the account or instrument with all credits and the indorsements thereon, and to state that there is due to him, on such account or instrument, from the adverse party, a specified sum, which he claims with interest; and when others than the makers of a promissory note, or the acceptors of a bill of exchange, are parties, it shall be necessary to state the facts which fix their liability."

The original New York Code contained a like provision as to an action or defense founded upon an instrument for the payment of money only, omitting the word "unconditional," but it was held under that Code that where the obligation was conditional or depended upon facts' outside the instrument it was necessary to allege such additional facts as might be necessary to show a complete, valid and binding obligation. (Tooker v. Arnoux, 76 N. Y. 397; Broome v. Taylor, id. 564.) The general effect of the provision and a pleading under it where applicable was declared by the Court of Appeals of New York to be as follows: "The section is express and imperative; it shall be sufficient to give a copy of the instrument, and to state that there is due thereon to the plaintiff from the adverse party a specified sum, which he claims. A complaint thus worded implies that the plaintiff owns the instrument in some legal manner of deriving title; that the event has happened on which the payment depends, and the amount is expressly stated. The defendant, by a general denial of the indebtedness, puts in issue every fact alleged, expressly or impliedly; and on the trial the plaintiff is bound to prove his case the same as though every fact necessary to maintain the action had been averred explicitly. Every fact which is thus impliedly averred, may be traversed by the defendant

in the same manner as if it were expressly averred." (Prindle v. Caruthers, 15 N. Y. 425, 429.)

To authorize this form of pleading under our statute upon a written instrument, it must be one for the *unconditional* payment of money only. If it be such an instrument, then, instead of pleading its legal effect and the other facts necessary in such case, the party may set forth a copy of the instrument with all credits and the indorsements thereon, and state that there is due to him, on such instrument, from the adverse party, a specified sum which he claims, with interest; stating also if others than the makers of a promissory note, or the acceptors of a bill of exchange, are parties, the facts which fix their liability. There is no contention in this case that the necessary additional facts are not pleaded which fix the liability of the defendant as drawer of the check, if it should be held to be an instrument for the unconditional payment of money. It is not essential under Section 4406 that the instrument be negotiable, for it may be one for the unconditional payment of money only, though not negotiable, as where it is not payable to the order of the payee or any specified person or to bearer. It follows that where the instrument upon which the action, counterclaim, or set-off is founded is one for the unconditional payment of money only, whether negotiable or not, it is unnecessary, in the short form of pleading authorized by Section 4406, to aver consideration for the promise or order, whatever might be necessary as to the proof. (1 Bates Pl. Pr. Par. & F. 191; 2 id. 1232.) While, therefore, the question of the negotiability of the check may be incidentally involved, that is not the essential question in the case, since the suit is brought by the one named in the check as payee, who alleges that it was drawn and delivered to him and that he is still the owner and holder thereof.

The contention that the check is payable out of a particular fund cannot be sustained. The words "For Wilkes," do not, in our opinion, import that the check is drawn otherwise than upon the general personal credit of the drawer,

but they appear, on the contrary, to be merely a statement of the object for which the check is drawn, or the person or account to which the amount was to be charged. Nor do they impress upon the check any element of contingency or condition as to payment. In Wells v. Brigham, 6 Cush. 6, 52 Am. Dec. 750, suit was brought upon an order reading as follows: "Mr. Brigham, Dear Sir: You will please pay Elisha Wells $30, which is due me for the two-horse wagon bought last spring, and this may be your receipt." In the opinion by Chief Justice Shaw, it was said: "The draft is payable at a time fixed, to-wit, on demand; on no contingency or condition, but absolutely; for a sum certain, out of no specific fund, but by the drawee generally. The fact that the draft indicates a debt due to the drawer as the consideration between drawer and drawee, does not make it the less a cash order or draft. The drawee, by his acceptance, admits such debt, and is estopped to deny it, as against the payee. * * * The statement of the origin of the debt, the purchase of a wagon, did not make it the less payable absolutely, and at all events, and not conditionally or out of a particular fund." In Ridgely Bank. v. Patton & Hamilton, 109 Ill. 479, the action was brought upon a check which directed the bank as follows: "Pay to Patton & Hamilton, for account of Lewis Coleman & Co., or order, ten hundred eighteen 23/100 dollars ($1,018 23/100)." Referring to the contention that the instrument was not a check because of the words "For account of Lewis Coleman & Co.," the court said: "We do not perceive that the presence of the words above named in the check detracts from its quality as such. They introduce nothing of contingency or uncertainty with respect to the payment, the sum payable, or person to whom it is to be paid. It still remains an order, in all its absoluteness, for the payment of a certain sum of money to the payees named, and is payable instantly on demand. The words, 'for account of Lewis Coleman & Co.,' would seem to have been inserted for the convenience of the drawers, to show the purpose for which the check was given, or

to show the equitable interest of Lewis Coleman & Co. A
bill or note, without affecting its character as such, may
state the transaction out of which it arose, or the considera-
tion for which it was given. (1 Parsons on Notes and
Bills, 44.) The words in question seem to do no more."

In State National Bank v. Reilly, 124 Ill. 464, 14 N. E.
657, the suit was brought upon a check drawn by the clerk
of the United States District Court for the Southern Dis-
trict of Illinois, and countersigned by the District Judge.
Upon the check and over the direction to pay appeared the
name of the court, and the following words: "Check Num-
ber 53. Case No. 2105. In the Matter of H. Sanford &
Company, Bankrupts." Following the direction to pay the
plaintiff a stated sum of money, and in the body of the check,
were the words and figures: "being in full for the dividend
of seven-tenths per cent declared April 30, 1881, on his
claim for $31,380 proved against said bankrupt's estate."
The statute, as well as a rule of court, required such checks
to be drawn in that form, but all deposits of funds paid into
the court were in one account, notwithstanding that the de-
posits were so made as to indicate the case or proceeding in
which the money had been paid, and that manner of keeping
the account upon the books of the bank was held to be
proper. Concerning the character of the check above de-
scribed, the court said that it was an absolute order to pay
the stated sum to the plaintiff, that it was "in the usual form
of bank check, drawn upon the general fund of the drawer,
without specifying any particular fund out of which it is
payable, and differs from such check only in the fact that
it has on its face some marginal memoranda, and also some
in the body of the check."

In the case of the First National Bank v. Lightner, 74
Kan. 736, 88 Pac. 59, 8 L. R. A. (N. S.) 231, 118 Am. St.
353, 11 Ann. Cas. 596, the question was whether an order
was a negotiable bill of exchange, or was payable out of a
particular fund, the order reading as follows: "Hutchin-
son, Kan., August 10, 1903. G. W. Lightner, Offerle,

Kan.: Dear Sir—Pay to the order of the First National Bank of Hutchinson, Kansas, $1,500, on account of contract between you and the Snyder Planing-Mill Company. (Signed) The Snyder Planing-Mill Company, Per J. F. Donnell, Treasurer." The following also appeared upon the order: "Accepted:, G. W. Lightner." It was held that the order was a negotiable bill of exchange, payable absolutely, and that the words, "on account of contract," etc., did not amount to a direction to pay out of a particular fund, but merely indicated the fund to which the drawee was to look for reimbursement. Many pertinent authorities are cited and reviewed in the opinion. While conceding that similar expressions have been held to show an intention to charge a particular fund, the court say: "The weight of authority and reason support the proposition that the words amount to no more than an indication of the fund from which the drawee is to reimburse himself. The words used are substantially the same as though the order read, 'and charge to account of contract,' etc."

The conflict in the authorities does not, we think, extend to such memoranda or expressions as are found upon the check in question here, for we fail to observe any substantial resemblance between the words upon this check and those which have been held to indicate an intention to charge a particular fund with the payment of the amount directed or promised to be paid. Had there been no other explanatory memoranda upon the check, we would perceive no reason for holding that the words, "For Wilkes," indicate anything more than the purpose or consideration for which the check was drawn, or the account to be charged with the amount, but that they were intended as a compliance with the suggestion found upon the check that the object be stated is so evident, any ground for doubt that might otherwise exist concerning their meaning and effect would seem to be removed.

It has not generally been held that a statement in or upon a bill, note or check, indicating the consideration therefor,

or the account to be charged with the amount, and the like, renders the payment, promise or order conditional, or affects the negotiability of the instrument. There is a clear distinction between such a statement and an order or promise to pay out of a particular fund, and this distinction is usually recognized in statutes defining negotiable instruments, as it is in our statute by the provision that an order or promise to pay out of a particular fund is not unconditional, but that an unqualified order or promise to pay is unconditional, though coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, or a statement of the transaction which gives rise to the instrument. (Comp. Stat., Sec. 3161.) We hold, then, that the direction contained in this instrument is not to pay out of a particular fund as distinguished from an order upon the general credit of the drawer.

What has seemed a more difficult question is presented by the contention respecting the words in the lower left-hand corner of the instrument, "This check may not be paid unless object for which drawn is stated." The natural inference would be that these words were printed upon the check as part of the printed form used by the defendant company, expressing a rule to be observed by its officers and agents in drawing and issuing checks that the object or purpose of each check be stated upon its face; and counsel concede that to be the fact. Whether printed or written, the broadest effect that can reasonably be claimed for the words is that they require the object for which the check is drawn to be stated, and for the purposes of this case it may be conceded that they amount to such a requirement. If, when not complied with, that requirement, expressed as it is upon this check, should be held obligatory upon the bank and sufficient to deprive the payee of the right to demand payment, the reason therefor would not be that the instrument was payable only upon an unfulfilled condition, but rather that one of the elements necessary to give

the instrument any force is omitted; in other words, that the instrument is not a check without the required statement of the object for which it was drawn. It is not declared that the check is payable only upon a contingency, as that term is usually understood, viz: an event which may or may not happen in the future, for that which is to be done must obviously be done before delivery of the check, and by the drawer or its agent as part of the act of drawing and issuing it. This provision does not resemble any that has been considered by the courts in determining whether an instrument was payable upon a condition or absolutely, for in each of the reported cases coming to our notice the alleged condition was something to be done or to occur after the instrument was delivered, and subject only to the supposed condition the instrument was complete and required the payment of the amount stated. For example, in Bavins v. Bank, 1 Q. B. Div. (1900) 270, it appeared that a check directed the payment of a stated sum of money, "provided the receipt at foot hereof is duly signed, stamped and dated." It was held that the check was not unconditional and, therefore, not negotiable. And so in Bank v. Gordon, 86 L. T. Rep. 574, a check was held not to be a bill of exchange which was declared to be payable only upon signature by the payees of a form of receipt at the foot of the instrument. But in the case of Nathan v. Ogdens Limited, 93 L. T. Rep. 553, a check was held to be negotiable upon which were the words: "The receipt at back hereof must be signed, which signature will be taken as an endorsement of the cheque," and upon the back was a printed form of receipt. The court said that the order to pay was unconditional, for while the words at the foot of the check were imperative in terms, they were not addressed to the bankers, and did not affect the nature of the order to them. The provision we are considering has reference primarily to the manner of drawing the check.

As we view the matter, therefore, the question to be decided in this connection is whether the instrument set out

in the petition is upon its face a check of the defendant company, showing an obligation of the defendant to pay the amount stated, payment having been refused by the bank to which it is addressed. A check is usually defined to be a draft or order upon a bank for the payment, at all events, of a certain sum of money to a person, or his order, or to bearer, and payable instantly on demand. It is an evidence of indebtedness, and as between the drawer and the payee is equivalent to the drawer's promise to pay, although the latter may not be bound absolutely until payment has been duly demanded of the bank and refused. And an action may be brought upon the check by the holder against the drawer to recover the amount evidenced thereby. (Camas Prairie State Bank v. Newman, 15 Ida. 719, 99 Pac. 833, 128 Am. St. Rep. 81 & notes.) It is said that the contract of the drawer is that the bank will pay the amount on demand, and until demanded the drawer is not bound. "But when this is done and shown, the check then imports a debt from the drawer to the payee, and it may be sued on without proving the consideration, value received being presumed." (2 Daniel's Neg. Instr. (3rd Ed.), Sec. 1646.) The Negotiable Instruments Act defines a check as a bill of exchange drawn on a bank payable on demand and the Act declares that a check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. (Comp. Stat., Secs. 3343, 3344. A bill of exchange is defined as an unconditional order in writing addressed to one person by another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand, or at a fixed determinable future time, a certain sum of money to order or to bearer. (Id., Sec. 3284.) The payment of a check may be stopped or countermanded at any time before it is actually presented and paid, but in doing so the drawer assumes the consequences of his act.

Statutes have been enacted in some states requiring a particular statement of the consideration in certain cases, as in the case of a note given for a patent right, and in Missouri the statute required that to be negotiable a note must contain the words, "value received." Under such statutes a note containing the required statement becomes a valid and effective instrument, according to its terms, except that statutes such as those requiring a note for a patent right to state that it is given for such purpose, usually provide that the note shall be subject to the same defenses as to consideration in the hands of any holder as in the hands of the payee named in the note. But the point we wish to suggest by referring to statutes requiring a statement of consideration in any form is that when the consideration is stated as required, the instrument is effectual, and may even be negotiable, subject only to such defenses in the hands of a third party as may be provided in the statute. (Haskell v. Jones, 86 Pa. St. 173.) The memorandum in question, conceding the effect thereof to be as contended, viz: to require that the object be stated, would seem to have no greater effect than a similar statutory provision, so that when complied with, if it is otherwise in proper form and unqualified, the instrument will be a check, and necessarily an instrument for the unconditional payment of money, though subject, of course, to such defenses as may properly be interposed in a suit upon any instrument of that character in the hands of the one suing upon it.

We are not called upon to decide what the rights of the parties would be if there had been no attempt to state the object upon this check, for the provision with reference to stating the object must be considered in connection with the words, "For Wilkes," which words are to be regarded as having been written in the check for the purpose of stating the object, and we think they do tend to explain it, though they may appear indefinite and uncertain to one not acquainted with the facts. It is contended that they do not amount to a sufficient statement, since "For Wilkes" might

indicate either a debt due to Wilkes, or that the money was loaned or advanced to him, or even some other consideration or purpose. It is to be observed that the requirement, if it be a requirement, is merely that the object be stated. It does not go to the extent of suggesting a particular form for stating the object, or the manner of stating it. To determine, then, what would amount generally to a statement of the object within the meaning of the requirement, and whether it is sufficiently stated upon this check, it is important that we consider the reason and purpose of the requirement. Counsel do not disagree as to that, nor do we disagree with counsel. We think that the purpose is obvious. One fact is stated by counsel which we might not otherwise know, viz: that a form of check like this is generally adopted by corporations engaged in the live stock business in the section of country in which the defendant is so engaged. And they state the purpose to be, in substance, that the company may be advised from a mere inspection of the check of the transaction giving rise to it, and to aid in making the proper charges and credits upon the books of the company. In this there is no suggestion of any public interest to be subserved, but the object is to be stated for the sole convenience of the company in whose name the check is drawn. It would seem to follow that any form of statement, however brief or indefinite, that would inform the company—the drawer—as to the matter would be sufficient. But who is to determine whether the statement upon a particular check is sufficient to convey the desired information to the drawer? Must the payee or the bank assume the responsibility of doing so? To hold, as contended, that, in order to comply with the provision as to stating the object, such object must be fully and definitely stated so as to clearly explain the consideration or transaction, or otherwise the check would be of no force or validity, might permit the drawer to avoid liability upon the instrument as a check merely upon the ground that, though the object appears to be stated in some form, it is not sufficiently stated

to fully and clearly inform every one as to the actual facts of the transaction, notwithstanding that the consideration may in fact have been valid and adequate, and the drawer may fully understand the meaning and purport of the words used. It would then be perilous for the bank to pay any such check, for the drawer might question the sufficiency of any statement, and the one receiving the instrument for a valid debt might find that he had surrendered some important legal advantage, or parted with something of value in exchange for a piece of paper, the value of which depends primarily upon whether the object is stated upon it in such a clear and definite manner that anyone can understand it; a matter that might ultimately have to be determined by the courts. Yet it is not unusual for checks to contain memoranda stating the consideration, or referring to the debt for which the check is given, or the transaction giving rise to it, and the character of the check is in no way affected, as a rule, by any such memoranda. As above stated, it is expressly declared by statute that an unqualified order or promise is not conditional, though coupled with statements of the kind suggested when they do not provide for payment out of a particular fund. The only difference to be observed as to the check here is that it provides for stating the object. But we do not perceive that to be at all important when the object is in fact stated. We think it evident that the form of check set out in the petition was intended to be used in the business transactions of the company like ordinary checks, and with the same effect, requiring only that in addition to the other necessary things the check shall contain a statement of the object for which it is drawn. If the contention here made on the part of the defendant be sound, then its checks would amount to practically no value until paid in the hands of anyone, and certainly of no value for commercial purposes.

The instrument in question is an order upon a bank presumably to pay the amount stated out of funds of the defendant there deposited and subject to be drawn out by

check.  We have referred to the custom of placing memoranda upon checks.  As a rule that is done to preserve information for the benefit of the drawer, and it may also serve as a convenient receipt showing the purpose of the payment, but that does not affect the duty of the bank, for it is a general rule that a bank is not bound to take notice of memoranda upon the margin or in the body of a check placed there for the convenience of the drawer.  (State National Bank v. Dodge, 124 U. S. 333, 8 Sup. Ct. 521, 31 L. Ed. 458;  State National Bank v. Reilly, 124 Ill. 464, 14 N. E. 657;  Duckett v. Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513.)  That principle was applied in the cases of Bank v. Dodge and Bank v. Reilly under circumstances rendering them to some extent in point upon the facts of this case, though a different question was considered.  It was held in those cases that a bank upon which a check had been drawn was not bound to observe memoranda stating the particular consideration and purpose of the check, notwithstanding that the check had been issued by a public officer and under a statute requiring the consideration and purpose to be stated.  The facts in the two cases were similar and the point presented the same. It appeared that the bank had been appointed as depository for the United States District Court for the Southern District of Illinois.  The clerk of that court deposited the funds belonging to the registry of the court with said bank, the deposits being entered by the bank in the name of said court, and each deposit ticket, as well as the entry of the deposit in the books of the bank, containing a number which represented the number of the case or proceeding in the court in which the funds had been received.  A separate account, however, was not kept of the funds received in each case, but the deposits were kept in a single account upon the books of the bank.  It was held by the court in Bank v. Dodge, that the account was properly so kept, that being one of the questions in the case.  Checks upon the funds deposited were issued signed by the clerk and coun-

tersigned by the district judge, each of which contained
upon its face the name of the court, the title and number of
a particular case, and the order required the payment of a
specified sum of money, stating in substance that it was in
full for a certain dividend that had been declared upon the
payee's claim proven in the case mentioned upon the check.
A large sum of money had been paid into the registry of
the court in a certain bankruptcy case and the funds so
received had been deposited in said bank by deposit tickets
stating the number of the case. It appeared that the bank
before the presentation of certain checks in controversy for
the payment of dividends in said bankruptcy case had act-
ually paid out on similar checks, properly signed, all the
funds which had been deposited with it to the credit of the
court, many of such checks having been drawn in cases in
which no deposits had been made. The suits were brought
to recover the amount of the checks from the bank on the
ground that it had improperly paid checks drawn in cases
wherein no money had been deposited. But, notwithstand-
ing that the deposit tickets and the books of the bank op-
posite each deposit stated a particular number as represent-
ing the number of the case in which the money had been
received and purported to be deposited, it was held that the
bank was not required to take notice of the number and
title of the case and the purpose for which the check was
drawn in paying particular checks, and was not, therefore,
liable to pay the checks in controversy, although it had paid
out of the funds deposited to the credit of the court other
checks shown to have been drawn in cases in which no de-
posits had been made.

In the case of Bank v. Dodge the Supreme Court of the
United States say: "The claim on the part of Dodge is,
that it was the duty of the bank, not merely to keep the
funds of the court safely, but to refuse to honor the checks
of the court if it found that the court was drawing checks
in any particular case, according to its number, beyond the
amount deposited in the bank under that number, but we

are of opinion that the bank had a right to assume that these memoranda of numbers in the deposits and in the checks were merely for the convenience of the court and its officers; and that it also had a right to presume that the court and its officers were properly performing their duty in distributing its trust funds. * * * The deposits being as required, in the name and to the credit of the court, the bank was authorized and required to honor all checks drawn by the court, and to pay them generally out of such deposits; and the order or check for withdrawing the money, in stating the case in or on account of which it was drawn was a memorandum imposing no duty upon the bank, but only operated for the convenience of the court and its officers in keeping its accounts. The obvious purpose of the memorandum of numbers in the deposit book of the court and upon the checks was to enable the court and the clerk to properly keep the accounts, and that the check might operate as vouchers, showing the manner in which the moneys in any particular case were distributed, and to enable the clerk to show to the court that he had deposited the funds which he had received. There is no evidence anywhere of any intention that the bank should be controlled by the numbers in paying any check drawn upon it." The court quotes in the opinion the statute which provided that every check upon the funds of the court so deposited "shall state the cause in or on account of which it is drawn."

Referring to the form of the check in the case of Bank v. Reilly, supra, which was the same as the checks in Bank v. Dodge, the Supreme Court of Illinois say that the check was no doubt drawn in that form for the reason that the statute and a similar rule of the court required that "every such order shall state the cause in or on account of which it is drawn," and then proceed as follows: "It cannot be known certainly why every such order should contain these things or this particular information. Many reasons might be suggested why it should be so. First, it was an assurance from the court to the bank that the trust funds in its custody

were being withdrawn for the use of beneficiaries, and were therefore not being misappropriated; second, it might be of advantage to the court and its officers in making up the accounts with each estate in bankruptcy pending or that had been adjudicated in the court; and third, it would be a convenient mode of obtaining vouchers from the parties receiving dividends, that would operate as a protection to the officers making such payments. What reason may have existed for so providing by statute and by rule, matters little. It is only important it is declared the check or order for withdrawing such fund shall contain the things enumerated. Without looking for the reason why it is so, the only concern is what such memoranda indicated, or what obligation, if any, there was thereby imposed upon the bank. Beyond what has already been said, that it was an assurance from the court itself, the funds were being withdrawn for a legitimate purpose, it is not perceived the memoranda, either on the margin or in the body of the check, contained anything for the guidance or information of the bank in any manner whatever, nor was the bank under any legal duty to observe such memoranda. The bank could not know, nor was it important it should know, that 'H. Sanford & Company' were the bankrupts whose estate was being administered in 'case No. 2105,' nor that the payee of the check was a creditor of such bankrupts, nor that the same was ordered to be paid him as in full of a dividend declared at a certain date, and was a certain per cent of his claim allowed against such bankrupts. These were matters exclusively within the knowledge of the court and its officers, and with which the bank had no rightful authority to intermeddle. It is well known, and the testimony is full to that point, the practice among banks paying checks of their depositors is not to observe memoranda upon such checks, but the custom is to regard them as having been made for the convenience of the drawers, and the practice in that regard, it is thought, has the sanction of law in its support."

In that case it was also said that the check was an absolute order to pay the sum of money stated.

If it was proper upon the facts of the cases above referred to for the bank to pay checks drawn upon trust funds without observing the memoranda upon the checks to determine whether any money had been deposited in the cases mentioned, there would seem to be much less reason in this case for holding it incumbent upon the bank to observe and determine whether the words used to state the object were sufficient for that purpose. Unless such duty rested upon the bank, it might properly and it would be its duty to pay a check containing the provision aforesaid suggesting that the object must be stated, at least when the object is stated in some form which might be understood by the drawer, or one who knows the circumstances. And the bank might rightly assume, we think, that the officer or agent drawing the check had properly and sufficiently stated the object. The only reasonable conclusion, in our opinion, is that when the object appears to be stated, if not otherwise, it would not be the duty of the bank, in the absence of other specific instructions, or the payee or other holder, to inquire or determine whether the statement is such as will fully inform the company as to the transaction, and much less whether it amounts to a clear and definite explanation thereof, unless, perhaps, the object is so stated as to be manifestly fictitious or to mean nothing. For all we may know the object is stated upon the check in question in the form usually employed for that purpose by the officers and agents of the defendant company. The fact that the company countermanded payment might be taken as some indication that the act was considered necessary to prevent payment upon presentation. If the instrument be in fact without consideration, that defense is open to the drawer while the paper remains in the hands of one against whom that defense may be made. We perceive no reason for supposing that the drawer would not understand what was meant by the words, "For Wilkes," if the amount represented a valid

obligation for which the check might be drawn, for it was in a position to know whether or not and for what purpose any such amount was due or properly payable by the company for or on account of Wilkes.

When it is determined that it would not only be proper, but the duty of the bank to pay the check upon presentation, unless payment has been countermanded, it follows that the check is unconditional. We, therefore, conclude that the check sued on is an instrument for the unconditional payment of money, authorizing the short form of pleading, and that it was error to sustain the demurrer. The judgment will be reversed and the cause remanded for such further proceedings as may be proper.

BEARD, C. J., and SCOTT, J., concur.