THE BURLINGTON MUTUAL LOAN ASSOCIATION v. HEIDER ET AL.

1. **Usury**: BUILDING ASSOCIATION: CODE, SECTION 1186. Section 1186 of the Code does not authorize the taking of interest on premiums by building associations, and where such interest is contracted for, which renders the total interest charge greater than the legal rate on the amount actually received by the borrower, it constitutes usury. Following *Hawkeye Benefit & Loan Association v. Blackburn,* 48 Iowa, 385.

2. —— : —— : PREMIUMS ON LOANS. Under the statutes of this State, as they stood prior to the enactment of section 1186 of the Code, the exacting of premiums on loans by building associations, whereby they obtained more than the legal rate of interest, was usurious.

3. —— : WHO MAY PLEAD. Only a party to a contract can plead that it is usurious. One who for a full consideration assumes the payment of a mortgage cannot plead usury as a defense thereto.

*Appeal from Des Moines District Court.*

SATURDAY, DECEMBER 18.

ACTION to foreclose three several mortgages. An answer and cross-petition was filed, and it was pleaded therein: *First*, payment; *Second*, that there was no consideration for one of the mortgages; and, *Third*, that all were tainted with usury. There was a reference, and the referee found against the defendants as to all the defenses. To the report of the referee exceptions were filed, and the court found and held that the mortgages were usurious, that two of them had been satisfied, and that there was a sufficient consideration for the other. A decree of foreclosure as to one of the mortgages was entered, and the plaintiff appeals.

*Hall & Huston*, for appellant.

*J. & S. K. Tracy*, for appellee.

SEEVERS, J.—I. The plaintiff was organized under the general incorporation law in 1868. Two of the mortgages were executed prior to the passage of the curative act, Code,

§ 1186.   The question of usury under the curative act and law as it existed prior to its enactment was somewhat considered in *Hawkeye Benefit & Loan Association v. Blackburn*, 48 Iowa, 385.   The correctness of this decision has been assailed by counsel for the appellant in an able and exhaustive argument.   It is insisted there is a difference between the two cases.   This shall first receive attention.   The general objects of both corporations were undoubtedly identical.   The general plan of doing business is the same.   The most, we think, which can be said is that slightly different modes were adopted to accomplish the same end.   In the former the amount of the premium depended on the necessities of the borrower, as the loan was made to whoever bid the highest premium therefor.   In the present case the premium was fixed by the articles of incorporation or by-laws at ten per cent on the amount loaned, and was uniform in all cases.   In the former the association became extinct in ten years.   In the latter it was to continue until the shares of certain series reached the par value of two hundred dollars.   In both, monthly dues were to be paid, and while in the former there was an apparent obligation to pay the principal, yet, if the interest and dues were promptly paid when due, the principal was not collectible unless possibly at the end of ten years the obligation to a certain extent to pay the principal might be enforced in order to equalize profits among the members.   In the case at bar there was no obligation to pay the principal, and, in fact, with honest management, and if no losses of any kind were incurred, the principal was not to be repaid except to the extent that the payment of interest and dues could be so regarded.   If there was a failure to do this for the period of four months the principal sum became due and at the option of the plaintiff its payment could be enforced.   Because of such failure the plaintiff has availed itself of such option, and this action was brought to enforce the payment of the principal, interest and dues.

It is, we think, quite evident there is no substantial differ-

ence between this and the Blackburn case in so far as the question of usury is concerned, and both must be governed by the same legal principles. The par value of the stock was fixed at two hundred dollars per share, but no part of this was paid at the time of the organization; the plan being that each subscriber should pay one dollar per share each month, and the money thus obtained constituted the capital and was loaned to members. On such loans ten per cent was deducted as the premium when the loan was made, and ten per cent interest was to be paid monthly on the money actually paid the borrower, and also on the premium. From the interest thus paid, and accumulated dues, other loans were made; and thus the business of the association was done.

The amount loaned in no instance could exceed the par value of the stock owned by the borrower.

The practical workings were that the defendant, being the owner of five shares of stock, applied for and obtained a loan of one thousand dollars, for which he gave his obligation secured by a mortgage. He only got, however, nine hundred dollars, and agreed to pay interest at the rate of ten per cent per annum monthly on one thousand dollars, and five dollars monthly as dues. This latter sum, however, he was bound to pay whether he was a borrower or not. So that for the nine hundred dollars he each month paid eight dollars and thirty-three cents interest and five dollars dues. When the payments would cease was indefinite and uncertain, for they were to continue until each share owned by the defendant and all other shareholders reached the par value of two hundred dollars. It is said if there was honest management and no losses incurred that experience demonstrates such period would be reached in about nine years. This we presume to be true. But still this does not remove the uncertainty. For the management may not be honest. In fact it is so claimed in the present case, and that losses were thereby incurred. Fires may de-

1. USURY: building associations: code, sec. 1186.

stroy the mortgaged property, or great and unexpected depreciation in values take place, and thereby losses may occur. The longer the payments continue the more apparent the usurious nature of the transaction would become.

But on the supposition the payments will cease at the end of nine years, how will the account stand. The money actually received is $900. During the period of one hundred and eight months the defendant would pay $1,439.44. If he paid only ten per cent interest on the money actually received, the amount would have been $1,350. There is, and can be, no doubt that an agreement to pay ten per cent per annum on $1,000, when only $900 was loaned, is usurious. Because of the plan of the association, this, it is said, is not the transaction or effect in the case at bar; that there is in fact no loan, but a mere advance of the ultimate value of the stock. But if this ultimate value is reached sooner than it otherwise would be by reason of usurious interest exacted and paid, does it not, nevertheless, constitute usury? The name given the transaction, as if it be called a loan, advance or purchase of shares, is not a controlling circumstance, but these parties designated it a loan. The defendant made written application for a loan, and it was made. The name of the plaintiff implies that it is a loaner of money, and we are authorized to infer from the record that this was its sole business. There is no pretense it ever engaged in the erection of buildings; we shall, therefore, designate this as a loan, which in form it was. It is said there must be an agreement that the money lent will be repaid without condition or contingency. In support of this proposition *Burrows & Prettyman v. Cook & Sargent*, 17 Iowa, 436, and other cases are cited. As applied to the case then in hand, we are not prepared to say such general proposition is not correct, but there is another proposition equally true, that it matters not what may be the form or device adopted; if more than the legal rate of interest is exacted on the money loaned it constitutes usury. Code, § § 2079, 2080.

Suppose the transaction had been as follows: That the defendant borrowed of the plaintiff $1,000, and gave his obligation therefor providing he was never to pay the principal, but was to pay twenty-five per cent interest thereon for twenty years. Such an obligation would, we think, be usurious on its face, and the intent or good faith of the transaction would be immaterial. For "if it shall be ascertained in any suit upon a contract that a greater rate of interest has been contracted for than is authorized" (Code, § 2079), "either directly or indirectly" (Code, § 2080), the contract must be declared usurious.

If the plaintiff had obtained only $500 and given his obligation to pay ten per cent interest on $1,000 for twenty years, and providing the principal was not to be repaid, the contract would be usurious, and it would make no difference if he ceased paying interest at the end of one year, because it is the contract or agreement which constitutes usury, and not the amount paid. It is quite apparent, therefore, we think, it is not absolutely essential that in all cases there must be an agreement to repay the principal. If this were so, devices could readily be adopted which would render the statute nugatory. Beside this, the proposition that the principal is not to be repaid is hardly sound. It is preposterous to suppose that the non-borrowers who own stock would be willing on business principles to permit their money or that of the institution to be loaned or advanced to other shareholders which was never to be repaid, unless they reaped some advantage therefrom greater than the loss of the principal. It may be as claimed, for aught we know, that associations like the plaintiff constitute important factors in the business of the country, and that they enable a class of persons, who otherwise would not be able to do so, to erect and procure homes for their families. Nevertheless, they are not charitable institutions, but are conducted on sharply defined business principles.

It was held in the *Blackburn Case*, under the curative act,

Code, § 1186, and the statute as it existed previous thereto, that the plaintiff was not authorized to take and receive interest on the premium. It is said that this holding authorizes the plaintiff to take an obligation for $1,000 when only $900 was loaned, provided no more than ten per cent interest is exacted on the latter sum. If such an instrument can be justly designated as "nondescript," we have only to say that the general assembly have sanctioned and authorized it. Their discretion and wisdom cannot be ignored.

It is urged that the defendant at the time the loan was made was indebted to the plaintiff in the sum of one hundred dollars, and instead of paying the money over it was deducted from the amount loaned. If this be essentially true usury cannot be predicated on such a transaction. But this supposed indebtedness is, we think, wholly imaginary. Had it existed, why not call it so instead of a premium. The only indebtedness of the defendant consisted of the monthly dues, and it is not claimed that any portion of such dues were due at the time the loan was made.

The premium did not constitute an indebtedness separate and distinct from the loan. It grew out of and was created 2.——:——: by the loan, and was legally exacted under the <sub>premiums on loans.</sub> curative act. Code, § 1186. But that act does not authorize interest to be charged thereon. The fact that such an act was deemed essential is an indication there were doubts whether the existing statute was sufficient as a protection against a charge of usury. We are of the opinion under the statute existing before the curative act was passed the plaintiff could not lawfully exact a premium on the money loaned, and thus obtain more than the legal rate of interest.

II. One of the mortgages was executed by A. C. Heider, he being the owner of the requisite stock and the borrower. 3.——: who This mortgage was executed in 1870. Subsemay plead. quently, but at what time does not appear, the mortgaged property was conveyed to M. E. Heider, wife of the defendant J. J. Heider, and the payment of the mort-

gage was assumed by the latter. The terms and conditions of the assumption do not appear. J. J. Heider, in his evidence, speaks as if he had executed the bond and mortgage, but this must be a mistake, as it is contradictory to the pleadings, and his counsel, as we understand, concede the fact to be otherwise. A portion of the interest and monthly dues which A. C. Heider agreed to pay were paid by J. J. Heider.

Whether A. C. Heider was made a defendant does not appear. The cross-petition was filed by J. J. Heider only, and the answer purports to have been filed by a single defendant. The referee recommends a judgment against J. J. Heider only. Under these circumstances we are warranted in inferring that A. C. Heider did not plead usury, and J. J. Heider having assumed, in consideration of the conveyance of the mortgaged property, to pay the mortgage, we are unable to see why he should be permitted to escape doing so by pleading and establishing usury. He is a stranger to the contract and voluntarily undertook to pay the mortgage; not a part, but the whole, and we think he should do so. No one but a party to the contract can be permitted to plead usury. This view is sustained by *Hollingsworth v. Swickard*, 10 Iowa, 385, and other cases cited in 2 Withrow & Stile's Digest, 1091, Sec. 52.

Upon this mortgage the referee found there was due $404.11, and this must stand as the amount due. The court found there was nothing due on the mortgage, because it was tainted with usury.

III. For the mortgage executed in 1876, the defendant insists there was no consideration. Both the court and referee found against him in this respect, and he has not appealed. But if he had appealed and the cause were triable *de novo*, which we greatly doubt, we should not disturb this finding. The court correctly found this mortgage to be usurious. The decree must be affirmed in every particular

except as to the A. C. Heider mortgage, as to which it must be modified.

MODIFIED AND AFFIRMED.

ON REHEARING.

SEEVERS, J.—Our attention has been called, in a petition for rehearing, to a mistake in the foregoing opinion in stating the amount the defendant would pay at the end of nine years, if he paid ten per cent interest on the money loaned and repaid the principal. The result reached, is not, we think, affected by the mistake. We have reexamined with care the whole record, and are of the opinion a rehearing should not be granted.

It would be useless to state at any greater length than has been done the reasons upon which our conclusion is based. The petition for rehearing is

OVERRULED.