SAMUEL USHER, 2d, *vs.* A. S. TUCKER COMPANY.

Suffolk.    November 21, 1913. — May 19, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Bills and Notes,* Liability of drawer of check after stopping payment of it.    *Bank.*

A check upon a bank, given for a good consideration, was indorsed in blank by the payee, who was a holder in due course, and was presented to the bank upon which it was drawn through the Boston clearing house. There were funds of the drawer in the bank to pay the check. The drawer had given to the bank a notice not to pay the check which was overlooked by the paying teller, who failed to return the check to the bank from which it came within the time allowed by the clearing house rule for such return, and the amount of the check was paid to the payee by the bank which had presented it through the clearing house to the bank upon which it was drawn, and was charged temporarily to the drawer's account with the bank upon which it was drawn. Later the error was rectified by the bank upon which the check was drawn making a corresponding credit to the drawer's account. The check remained with the bank. The drawer afterwards withdrew all his funds from that bank. The paying teller, who was responsible to that bank for his error, took an assignment of all the bank's right, title or interest in and to the check "or the funds evidenced thereby or the amount paid thereon," and brought an action upon the check against the drawer. *Held,* that the drawer's order to stop payment of the check did not affect his liability on it to the plaintiff, who had succeeded to the rights of the payee.

HAMMOND, J. The first count of the declaration is upon a check signed by the defendant, payable to the order of one Hobbs and by him indorsed, and now held and owned by the plaintiff.

At the trial * the plaintiff introduced the check in evidence, and offered to show the following facts: The check was given on a good consideration and was indorsed in blank by the payee who was a holder in due course for value. As thus indorsed it came through the clearing house to the Mutual National Bank, upon which it was drawn, and in which the defendant had on deposit sufficient funds to meet it. Before it reached the bank the defendant gave notice to the bank not to pay it when presented. By some error or oversight this "stop payment" order was ignored and the amount of the check was charged temporarily to the defendant's account. Later the error was discovered and the amount of the check was credited back. The defendant subsequently withdrew its funds from the bank, including the amount of the check. The defendant never has paid the check, and the bank refused payment of it, of which the defendant had due notice. The plaintiff is the paying teller of the bank, and the "charging up" to the defendant's account was his error, for which he is responsible to the bank. Under the rules of the clearing house, unless the check was returned by one o'clock of the day on which it came into the bank neither the plaintiff nor the bank had any right to return the check to the bank from which it came. The check was not returned within the time.

The result was that at the close of the day a sum amounting to the amount of the check had been transferred from the bank upon which the check was drawn to the payee of the check, that the bank held the check, that the plaintiff was responsible to the bank for the amount thereof, and that no money had been paid by the defendant.

Subsequently the plaintiff took an assignment of all the right, title or interest the bank had in and to the check "or the funds evidenced thereby or the amount paid thereon."

The drawer of a check impliedly undertakes that when the check is duly presented the bank upon which the check is drawn will pay it out of the drawer's funds in its hands. And under ordinary circumstances the drawer is not held until the check has

---

* Before *Hitchcock*, J. After the offer of proof by the plaintiff, described in the opinion, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

been presented to the bank and payment refused and notice of the dishonor has been given to the drawer. But this rule is not applicable where by reason of the action of the drawer such a presentation is useless, as in cases where there are no funds of the drawer in the bank with which to pay the check. *Beauregard* v. *Knowlton,* 156 Mass. 395, and cases therein cited. And *a fortiori* where the bank is forbidden by the drawer to pay. *Jacks* v. *Darrin,* 3 E. D. Smith, 557. *Purchase* v. *Mattison,* 6 Duer, 587.

It is true that the drawer may stop the payment of the check, and as between him and the bank the latter in such case pays at its peril, but such an order cannot discharge the liability of the drawer to the payee or one holding under him. Where the payment has been stopped, as above stated, the relations between the drawer and the payee become the same as if the check had been dishonored and notice thereof given to the drawer. And hence the effect so far as respects the drawer is to change his conditional liability to one free from this condition, and his situation is like that of the maker of a promissory note.

The check never has been paid either by the defendant or by any one rightfully acting for it. Under the circumstances disclosed in the offer we think that as between the plaintiff and the defendant the transactions by which the check came into the former's possession cannot be regarded as a payment of it so as to extinguish the liability of the defendant, but as a transfer of the check for a valuable consideration from the then holder to the plaintiff, the one ultimately liable for the error, conveying to him whatever right such holder at that time had.

*Exceptions sustained.*

*C. F. Eldredge,* for the plaintiff.
*C. F. Lovejoy,* for the defendant, submitted a brief.