[S. F. No. 12298.  In Bank.—July 31, 1929.]

CITY OF FRESNO (a Municipal Corporation), Respondent, v. CHARLES F. DILLON et al., Appellants.

Lindsay & Gearhart and Joe Crider, Jr., for Appellants.

W. E. Simpson, City Attorney, for Respondent.

CURTIS, J.—The City of Fresno brought an action against Charles F. Dillon and the Massachusetts Bonding and Insurance Company, surety upon Dillon's official bond, as Commissioner of Finance of the city, to recover license fees alleged to have been collected by Dillon and not accounted for, and the amount of certain illegal payments on municipal bonds authorized by Dillon during his term of office. Judgment was entered in favor of the city, and the defendants have appealed.

The District Court of Appeal of the First Appellate District, Division One, to which the cause was transferred for hearing and determination, affirmed the judgment *in toto*. On petition for hearing by this court, the appellants do not stress—in fact, we may assume that they concede the correctness of the judgment in the lower court, as affirmed by the District Court of Appeal, in so far as it relates to the shortage in the license fees collected by Dillon. We are of the view that the judgment as a whole should be affirmed, and we therefore adopt the decision of the District Court of Appeal, written by Mr. Justice Spence, *pro tem.*, and concurred in by Mr. Presiding Justice Tyler and Mr. Justice Knight, as follows:

"Dillon was elected to the office of Commissioner of Finance of the City of Fresno under the new charter which became operative in 1921. His official bond provided, 'Now, if the said Charles F. Dillon shall well, truly and faithfully perform all official duties required of him by law, and all such additional duties as may hereafter be imposed on him as such officer by any law hereafter enacted, then the above obligation to be void, otherwise to remain in full force and virtue.'

"There was a shortage of $5,533.32 in the license fees collected. Dillon approved claims or demands and caused warrants to be drawn for the payment of certain municipal bonds totaling $6,000, and thereafter, when these bonds in some manner were again presented, Dillon approved claims or demands and caused warrants to be drawn for a second payment of the same bonds.

"The liability of Dillon individually for his irregularities is not questioned, but counsel for appellants contends that neither Dillon nor his surety is liable on his official bond

as it was not the official duty of Dillon to collect the license fees nor to pay municipal bonds involved. No other question is raised on this appeal.

"We will first consider the situation with respect to the license fees above referred to.

■ "These license fees were collected under the provisions of Ordinance No. 846, which ordinance became effective several years prior to the adoption of the new charter. At that time Fresno was functioning under its previous charter, which created the office of license collector. The ordinance by its terms made it the duty of the license collector to collect the license fees imposed upon various trades, professions and businesses. The new charter of 1921 (Stats. 1921, p. 1821) made no mention of the office of license collector. It created a Department of Finance headed by a Commissioner of Finance. Section 1 expressly authorized the city to 'license for the purpose of revenue and regulation . . . all businesses, occupations, trades, professions, enterprises and projects and persons engaged therein, and for said purposes to assess, levy and collect license fees. . . . ' By section 145 it provided that 'All . . . city ordinances . . . now in force and not inconsistent herewith, shall be and remain in force after this charter takes effect until changed or repealed by proper authority. . . . ' Section 38 provides that 'the Commissioner of Finance shall have control and jurisdiction over the keeping of accounts and financial records; the auditing of accounts and claims; the levy, assessment and collections of taxes, special assessments, license fees and other revenues. . . . ' In section 55 it provided that 'All taxes, special assessments and license fees accruing to the city shall be collected by officers and *ex officio* officers of the Department of Finance. All moneys received by any officer or employee of the city for or in connection with the business of the city shall be paid promptly into the treasury.'

"Prior to the adoption of the charter of 1921 a certain Harry Erickson was serving as license collector. Upon the adoption of the charter and the qualification of Dillon, Erickson was appointed by Dillon as a Deputy Commissioner of Finance. The license fees were thereafter paid into the office of the Commissioner of Finance, it appear-

ing that Erickson was actually placed in charge of the collection of these fees.

"Counsel for appellants takes the position that Ordinance 846 remained in force and effect in its entirety after the adoption of the charter of 1921, and that, as the duty of collecting these fees was never transferred by ordinance from the license collector to the Commissioner of Finance, it was not the official duty of the latter to collect and account for the fees.

"With these conclusions we cannot agree. By Article XI, sec. 8, of the Constitution, it is provided· that upon the approval of a charter by the legislature, 'it shall become the organic law of such city or city and county and supersede any existing charter and all laws inconsistent therewith.' The general provisions of Ordinance 846 imposing the license fees were entirely consistent with the new charter, and the provisions thereof imposing the duty of collecting the license fees were inconsistent but separable. The new charter of 1921 by express terms gave the 'control and jurisdiction over . . . the collection of . . . license fees' to the Commissioner of Finance (section 38). The effect of this provision was to transfer to the Commissioner of Finance all duties with respect to the collection of license fees previously imposed by charter or ordinance upon the license collector. It thereupon became the official duty of the Commissioner of Finance to collect the license fees in question, and further legislation by ordinance was unnecessary for this purpose.

█ "With respect to the unauthorized approval by Dillon of double payment on certain municipal bonds, counsel urges that no liability exists on Dillon's official bond as Dillon could not legally make payment of these bonds. The bonds in question were issued in 1916 and were 'payable at the office of City Treasurer. . . . ' Under section 58 of the charter of 1921 it was provided that 'payment by the city shall be made only upon vouchers certified by the Commissioner of the appropriate department, or by the presiding officer of the appropriate board or other division of the city government, and by means of warrants on the City Treasury issued by the Commissioner of Finance. The Commissioner of Finance shall examine all pay-rolls, bills and other claims and demands against the city; and

shall issue no warrants for payment unless he finds that the claim is in proper form, correctly computed and duly certified that it is justly and legally due and payable, that an appropriation has been made therefor which has not been exhausted or that the payment has been otherwise legally authorized, and that there is money in the city treasury to make payment. He may require any claimant to make oath to the validity of a claim. He may investigate any claim and for such purposes may examine witnesses under oath, and if he finds it is fraudulent, erroneous or otherwise invalid, shall not issue a warrant therefor, and, if the situation warrants, shall call the matter to the attention of the City Commission for appropriate action.'

"By virtue of the broad powers and duties of the Commissioner of Finance under this section and of section 38 of the charter, a custom developed whereby all claims and demands, including those for payments on bonds, were presented to the Commissioner of Finance for allowance and approval, and the Commissioner would then in the case of bonds retain the bonds and issue warrants in favor of the bondholders upon the city treasurer. That this procedure was unnecessary with respect to city bonds, and that the bondholder was entitled to payment by the treasurer without the approval, allowance or the issuing of a warrant by the Commissioner of Finance was ultimately determined in a case involving one of these same bonds of the City of Fresno (*Commercial and Savings Bank* v. *Ewing*, 66 Cal. App. 231 [225 Pac. 476]). However, during the time the above mentioned custom was in vogue Dillon did approve, allow and cause his deputy to issue a warrant for the payment of a group of these bonds to the Pacific Southwest Trust and Savings Bank, which warrant was paid by the Treasurer. The face of the warrant did not show what bond payments were covered thereby but the records in the office of the Commissioner of Finance did so show. The above bonds mysteriously disappeared from the office of the Commissioner of Finance, and several of them were again presented to the Commissioner by various persons for approval and allowance within thirty days after their original presentation. In each instance Dillon again approved, allowed and caused his deputy to issue warrants for a second payment of these identical bonds. These warrants were also

paid by the Treasurer, resulting in the double payment by the city of the bonds in question.

"There is no doubt, under the authority of *Commercial and Savings Bank* v. *Ewing, supra,* that it was the duty of the Treasurer to pay these municipal bonds upon presentation without the approval, allowing or drawing of a warrant by the Commissioner of Finance, and that it was no part of the official duty of the Commissioner of Finance to pay said bonds or authorize their payment. This does not, however, foreclose the inquiry in the present case regarding the nature and extent of the official duties of the Commissioner of Finance.

"Sections 38 and 58 of the charter of 1921 gave to the Commissioner of Finance very broad and general powers with respect to the finances of the city, including the auditing and approving of claims and demands and the issuing of warrants therefor upon the City Treasury. Upon the issuing of a warrant by the Commissioner of Finance, payment by the Treasurer apparently followed as a matter of course. Section 130 of the charter of 1921 provided: 'Every officer who shall approve, allow or pay any demand on the treasury not authorized by law, ordinance or this charter shall be liable to the city individually and on his official bond for the amount of the demand so illegally approved, allowed or paid.' It is from the above-mentioned sections that the nature and extent of the official duties of the Commissioner of Finance must be here determined. No case construing similar provisions has been called to our attention. A reading of these sections leads to the conclusion that it was the official duty of the Commissioner generally to approve and issue warrants for the payment of authorized claims, and that it was likewise his official duty to withhold approval of and refrain from issuing warrants for the payment of unauthorized claims. The fact that it was not his official duty to pay or approve the payment of these municipal bonds in the first instance does not change the situation in the present case so far as the subsequent unauthorized approval is concerned. These bonds and a record of their approval were retained in Dillon's office. Dillon knew, and the records of his office disclosed, that these bonds had been covered by the warrant previously issued by him. When these bonds disappeared from

the office and were presented with new demands shortly thereafter, his action in approving their payment a second time and issuing warrants therefor constituted the approval by Dillon of unauthorized demands against the city in violation of his official duty, for which he and his surety are liable on his official bond as provided in section 130 of the charter.

"In the case of *County of San Luis Obispo* v. *Farnum*, 108 Cal. 562 [41 Pac. 445], which case is relied upon by appellants, the court, on page 564, in discussing whether it was the official duty of the auditor to pay over to the county certain county funds received by him and which it admittedly was no part of his official duty to receive, pointed out that such duty as existed to pay over these funds 'did not arise out of his office, nor was it at all different from the duty which would have rested upon him to pay it over had he been a plain citizen not holding any county office.' In the present case the duty of withholding approval of any unauthorized claim or demand was a duty imposed upon Dillon officially and not as a private citizen. Dillon's actions here in approving these unauthorized claims and demands and issuing warrants for their payment constituted the wrongful exercise of the general powers conferred upon him in his official capacity as Commissioner of Finance by the charter.

"Counsel also quotes at length from *City of San Jose* v. *Welch*, 65 Cal. 358 [4 Pac. 207], contending that the situation there is analogous to the present case so far as the collection of license fees is concerned. In that case, however, the bond was conditioned upon the faithful performance of the duties of 'city assessor and city clerk according to the laws and ordinances and regulations passed and approved by the mayor and common council of the city of San Jose.' By ordinance the duty to collect the taxes was not placed upon this official but upon the collector, and it was there held that the bond was limited in its terms to the duties cast upon the principal by the mayor and common council, and that the liability of the sureties could not be extended. Here the duty to collect the license fees was imposed by charter upon the Commissioner of Finance, and no further legislation was necessary to create the liability upon the principal and sureties under

the terms of the bond, which covered all duties required by law.

"The authorities cited by counsel on the general proposition that the liabilities of sureties are to be strictly construed are entirely in accord with our conclusions here.

"We conclude that the charter which created the office of Commissioner of Finance imposed upon that official, as part of his official duties, the duty of collecting license fees, and the duty of withholding approval of and refraining from issuing warrants upon unauthorized claims or demands against the city, and that these duties were 'official duties required of him by law' as provided in his official bond."

The judgment is affirmed.

Langdon, J., Shenk, J., and Richards, J., concurred.

WASTE, C. J., Dissenting.—I dissent. The gist of this action is the breach of official duty and not fraud. (*Norton v. Title Guaranty & Surety Co.,* 176 Cal. 212, 215 [168 Pac. 16].) The bonds here in question were legal and outstanding obligations against the city, and by virtue of the ordinance which directed their issue, both principal and interest were made payable at the office of the city treasurer "upon presentation and surrender," and the provisions of the charter relating to payment of unliquidated claims against the city "do not pretend to supplant these provisions of the ordinance." (*Commercial & Savings Bank* v. *Ewing,* cited in the majority opinion.) When, therefore, Dillon as Commissioner of Finance, interjected himself into the matter of the payment of the bonds, he was not acting officially but officiously. The loss to the city was as much the result of the second and wrongful payment as it was the result of the unofficial or officious audit and certification by Dillon. It does not seem to me to present a proper case for holding the sureties liable.

Seawell, J., concurred.