MELVIN PETERSON, appellee, v. JACK MODJESKA et al., appellants.

No. 51062.

(Reported in 125 N.W.2d 751)

JANUARY 14, 1964.

REHEARING DENIED MARCH 10, 1964.

Wilson, Maley & Stamatelos, of West Des Moines, for appellants.

Bump, Jordan & Holmes, of Des Moines, for appellee.

SNELL, J.—Plaintiff claiming to be the holder in good faith and for value seeks recovery from the maker of a dishonored check. The trial court, without the aid of a jury, found for plaintiff. Defendant Sid Beattie, the maker of the check, appeals. The two other original defendants and other issues are not involved here.

Plaintiff in May 1959 was a co-owner of a motor-vehicle filling station. Plaintiff knew Jack Modjeska as a customer. Modjeska was a salesman for Sid Beattie Ford, Inc., a dealer in new and used cars.

On May 21, 1959, plaintiff loaned Modjeska $1376. Repayment was to be four days later as evidenced by an I.O.U. This was in the handwriting of Modjeska in words and figures as

follows: "I, Jack Modjeska, owe Melvin Peterson $2200 to be repaid May 25, 1959." Modjeska did not pay.

On May 26, 1959, when the instrument was five days old and one day past due, plaintiff called on Modjeska to collect. Modjeska told plaintiff he would get him a check. Modjeska then consulted defendant Sid Beattie. Although not binding on plaintiff it is undisputed that Modjeska misrepresented to Beattie the reason he needed a check. It was to be held until the next day when it would be retrieved. This transaction was not in plaintiff's presence.

Beattie signed and delivered to Modjeska a check for $1300. Modjeska endorsed and delivered the check to plaintiff. Plaintiff deposited this check in his bank account. It was returned to him the next day marked "insufficient funds." Beattie later stopped payment.

Plaintiff then sued Modjeska for $2200 and Beattie for $1300. A third count in the petition sought recovery from Sid Beattie Ford, Inc. for merchandise sold to Modjeska. This count was dismissed by the trial court and there has been no appeal therefrom. Modjeska made no defense and judgment for $2200 was entered against him. Defendant Beattie defended on numerous grounds. The trial court found plaintiff to be a holder of the check in due course and entered judgment against Sid Beattie for $1300.

The check defendant Beattie gave defendant Modjeska was a negotiable instrument. It was regular on its face, it had not been previously dishonored and there was no evidence that plaintiff had notice of its infirmities as between Modjeska and Beattie.

The weakness in plaintiff's case is in the issue of good faith and value.

Section 541.52, a part of our statutory Negotiable Instruments Law, provides:

"What constitutes a holder in due course. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 541.57 provides:

"Rights of holder in due course. A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Under these statutory provisions if plaintiff took defendant Beattie's check in good faith and for value he is entitled to recover.

The transaction between plaintiff and Modjeska was clearly usurious. On May 21 plaintiff loaned Modjeska $1376. Plaintiff took an I.O.U. for $2200 due May 25, just four days later. Plaintiff admitted without equivocation that he was to receive $2200 for the $1376. This was such a shocking revelation that the trial court invited plaintiff to explain. Plaintiff repeated that that was all there was to it. Plaintiff also sued and took default judgment against Modjeska for the $2200. By no legitimate computation could interest, commission or carrying charge on a loan of $1376 for four days amount to $824. The fact that the loan was usurious is not even denied by plaintiff.

Under the provisions of section 541.57 quoted above and well recognized authority the defense of usury is not available to defendant Beattie. Martin v. Harper, 193 Iowa 259, 263, 186 N.W. 897; Partch v. Krogman, 202 Iowa 524, 528, 210 N.W. 612. The defense is personal to the borrower. 7 Am. Jur., Bills and Notes, section 273. This rule, however, does not prevent us from looking at plaintiff's position with a jaundiced eye when he attempts to invoke the letter of the law to collect on an unconscionable agreement. The Negotiable Instruments Law is designed and intended to aid in orderly and legitimate trade and commerce. When payment of a check is sought for credit

on a usurious agreement the position of the holder who claims he took it in good faith and for value is subject to close scrutiny.

If plaintiff was a bona fide holder for value of the Beattie check he can recover thereon. The record does not support his position as such.

The debt from Modjeska to plaintiff was past due. There was no extension of time and no agreement for forbearance of any kind. There was no new consideration between plaintiff and Modjeska. There was no evidence admitted by the trial court that plaintiff at that time gave Modjeska credit either actual or conditional. In fact there is no evidence as to when the alleged credit was given.

At one time while identifying the I.O.U. plaintiff said "$1300 was applied upon this note or instrument of $2200. That money was applied May 21." This statement was obviously wrong. The date mentioned was the date the I.O.U. was delivered. The Beattie check was not issued until May 26.

The I.O.U. has written on its face

"2200
1300
———
900 Bal—"

but there is not a word of admitted evidence as to when this notation was made.

Plaintiff attempted to testify that he gave Modjeska credit of $1300 upon the $2200 obligation. To these questions as asked objections were made and sustained. There is no evidence relative thereto in the record. Plaintiff has not complained about these restrictions.

There was no evidence in the record to support a finding that plaintiff was a holder for value.

Giving Modjeska credit on his debt would, of course, constitute value. Clearly in this case there was no unconditional credit. Beattie's check "bounced" and plaintiff has taken judgment against Modjeska for $2200. Plaintiff's case is bottomed on the theory that there was a conditional credit and that a conditional credit makes plaintiff a holder for value.

■ Admitting arguendo that there was a conditional credit that was not sufficient under Iowa law. Commercial National Bank v. Citizen's State Bank, 132 Iowa 706, 708, 109 N.W. 198, is squarely in point and positive in its language. The opinion says:

"The controlling question in this case is whether the plaintiff was a bona fide purchaser in the due course of business, and our conclusion thereon makes it unnecessary to consider the other questions argued by the appellants. The certificate was payable on demand and the return thereof, and was a negotiable instrument. But the undisputed evidence shows that the plaintiff did not give the Exchange Bank absolute credit therefor. The credit given was provisional; that is, if the certificate was paid by the issuing bank the credit became absolute thereafter, but if it was not so paid the same was to be charged back to the Exchange Bank. This was nothing more than a conditional credit, and the plaintiff did not thereby become a bona fide purchaser, either under the general law or by virtue of the statute relating to negotiable instruments."

This has been the law of Iowa since 1906.

It is true plaintiff's position finds support in recent cases from other jurisdictions. See Fair Loans, Inc. v. John N. Wilkinson, Jr., 211 Md. 216, 126 A.2d 851; Ahern v. Towle, 310 Mass. 695, 39 N.E.2d 561; Citrin v. Tansey, 107 N. J. L. 368, 153 A. 523; City of Fresno v. Dillon, 207 Cal. 714, 279 P. 767. The so-called "modern trend" however occurs in the application of the Negotiable Instruments Law to legitimate trade and commerce. It should not be applied in cases of such questionable ancestry and evasive and uncertain evidence as we have in the case at bar.

We adhere to our Iowa rule. The circumstances in this case do not prompt us to deviate therefrom even though other jurisdictions indicate a modern trend to the contrary.

The case is reversed and remanded for the entry of judgment absolving defendant Sid Beattie from liability on his check. —Reversed and remanded.

GARFIELD, C. J., and THORNTON, MOORE and STUART, JJ., concur.

PETERSON, HAYS, LARSON and THOMPSON, JJ., dissent.

PETERSON, J. (dissenting)—I respectfully dissent. The error of the majority arises in the assumption that there was something wrong between Peterson and Modjeska in the inception. It is shown by the evidence, without contradiction, that Peterson loaned Modjeska $1376 cash. It is true Modjeska gave Peterson an "I.O.U." for $2200, but that was purely a voluntary transaction between two men in the business world. While there was usury in it, that had nothing to do with Beattie giving a check for $1300. The majority properly discusses the elements of the negotiable instruments statutes, but brushes them aside on the mistaken theory that the original transaction did not smell right.

I will discuss the questions of Negotiable Instruments Law, usury not applying to Beattie, and the fact that in accordance with modern trend Commercial National Bank v. Citizen's State Bank, 132 Iowa 706, 109 N.W. 198, nearly 50 years old, antiquated, and completely outmoded should be overruled.

I will accept the statement of facts of the majority.

On May 26, 1959, when the note was past due, plaintiff went to Beattie's place of business and asked Mr. Modjeska for payment. Mr. Modjeska told him he would get him a check and in a few moments came back with a check signed by defendant Sid Beattie for $1300. The check was made to Jack Modjeska and he endorsed it to plaintiff. He told plaintiff he had more money coming but could not get it just then, but would get the balance in a few days.

Plaintiff deposited the check immediately in his bank account but it came back the next day marked "insufficient funds." Mr. Modjeska failed to pay anymore, and Mr. Beattie refused to pay the check.

This suit was then started by plaintiff.

I. One principal question raised by appellant was whether plaintiff was the holder in due course of defendant Beattie's

check for $1300, free of any defenses available to prior parties among themselves.

Our Negotiable Instruments Law, chapter 541 of the Code, provides adequate answers to this proposition. Section 541.52 provides: (see decision of majority).

Section 541.57 is also pertinent and is: (see decision of majority).

The facts of the instant case support all four of the statutory conditions. The check Beattie gave to Modjeska was an ordinary check written on a check form on which appeared the printed names of Mr. and Mrs. Beattie. The figures and written amount were regularly and in proper places put on the form by defendant Beattie and his name affixed. It was dated on the day it was made and delivered first to Modjeska and then by him endorsed and delivered to plaintiff the same day.

The check was not postdated and Mr. Beattie placed no conditions or reservations of any kind on the check.

The bank had called Mr. Beattie and told him his account was not large enough to pay the check. Beattie went to the bank and then found it had been deposited by an oil company. Not understanding that, he stopped payment.

The check was not overdue when plaintiff received it. He took it in good faith to pay on an obligation representing cash loaned by him to Modjeska. He had no notice of any infirmity in the instrument, nor defect in Mr. Modjeska's title to it.

Mr. Beattie signed it, delivered it, and sent it into the regular channels of business trade. He claims Mr. Modjeska said he needed it as a first payment on a home he was purchasing; although that was long after check was given. Mr. Beattie testified: "In the late afternoon of the date that the check was issued, Mr. Modjeska approached me about the purchase of a home that he had been contemplating and had asked me as a favor to help him negotiate such an offer." As far as plaintiff was concerned it would make no difference what Modjeska said to Beattie, since plaintiff knew nothing about it. Under section 541.52 plaintiff's title was clear and he was a holder and owner of the check in due course of business, and for value given by him.

We have approved the Code section in many cases, a few of which are: Sword v. Spry, 205 Iowa 266, 215 N.W. 737; State Savings Bank v. Behm, 202 Iowa 192, 209 N.W. 523; Merchants National Bank v. Grigsby, 170 Iowa 675, 149 N.W. 626; Midwest National Bk. & Tr. Co. v. Niles & Watters Sav. Bk., 190 Iowa 752, 180 N.W. 880.

Appellants lean heavily on sections 541.55 and 541.58. The first section provides: "When title defective. The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, * * *." Appellants claim Modjeska secured the $1300 check by misrepresentation. There is a question about that from the facts of the case. However, an exception in section 541.58 supersedes the general statement in section 541.55 in following language: "In the hands of any holder *other than a holder in due course,* a negotiable instrument is subject * * *." (Emphasis ours.) Plaintiff as a holder in due course is therefore not subject to the provisions of sections 541.55 and 541.58.

When a stop payment order is placed on a check, it in fact becomes a demand promissory note in the hands of a third-party holder in due course. Section 541.186; Patterson v. Oakes, 191 Iowa 78, 80, 81, 181 N.W. 787, 14 A. L. R. 559.

In Patterson v. Oakes, supra, we said:

"The question is: Could this action be maintained on the checks at said time, or was the same prematurely brought?

"Under our statute [present section 541.186], a check is payable on demand. Where the drawer of a check stops payment thereon [Beattie stopped payment on $1300 check], he is liable to the holder of the check for the consequences of his conduct. * * * The effect, so far as the drawer is concerned, is to change his conditional liability to one free from the condition, and his situation is like that of the maker of a promissory note due on demand. Usher v. Tucker Co., 217 Mass. 441, 105 N.E. 360 [L. R. A. 1916F 826]; Albers v. Commercial Bank, 85 Mo. 173, 55 Am. Rep. 355; Brown v. Cow Creek Sheep Co., 21 Wyo. 1, 126 P. 886."

If there were any misrepresentations by Modjeska when he received the check from defendant Beattie, they would not be chargeable to plaintiff, who received the check in due course of business. In Sword v. Spry, supra, the claim was there asserted that Burkey the endorser (like Modjeska) had obtained the defendant Spry's note (like Modjeska) by fraud and that Burkey had negotiated the note in breach of a conditional delivery agreement (like Beattie's claim Modjeska was to use the check as down payment on a home) with the maker. The fraud alleged was that Burkey had induced the maker to execute the note by making fraudulent representations as to the value and nature of subsoil in Wisconsin, the note being part of the consideration for the purchase of the real estate. This court said at page 270 of 205 Iowa:

"Finding of the court is that appellant knew nothing of the misrepresentations and false pretenses, and received the negotiable instrument without knowledge of any infirmity therein or prior equities claimed by its maker. Therefore, through said judicial conclusion appellee is bound, and the suggested requirement need not be further faced, for the otherwise confirmed fact now becomes fixed in the record as fully proved. Consequently, appellee possessed all the rights of and was entitled to litigate as a holder in due course."

II. Appellant primarily urges that plaintiff was not a holder in due course because he did not give anything of value for Beattie's check of $1300. The leading case cited by appellant in support of his position is the case of Commercial National Bank v. Citizen's State Bank, 132 Iowa 706, 109 N.W. 198. It is true this case, which was decided and announced 56 years ago, supports appellant in this position.

There have been many changes in the volume and activity of our business life in the last half century. Principles which were a logical and a just part of business transactions in 1907 oftentimes do not administer complete justice in 1963.

The ultimate question in the case at bar is whether the giving of credit in part payment of an indebtedness by endorsement on a written obligation constitutes taking for value.

The majority emphasizes the fact that plaintiff's credit was conditional. The record shows the I. O. U. had written on its face "2200

1300

___

900 bal." This is clear evidence that Modjeska had received credit on the document showing his indebtedness.

According to the modern trend it is not necessary that any value flow from endorsee of the document to the payer of the note or check. It is sufficient if "for value" is established as between the holder of the note or check and the endorser, provided the holder has no knowledge of fraud or deception between the original payer and payee.

This principle has now been established in many jurisdictions of our nation. Fair Loans, Inc. v. John N. Wilkinson, Jr., 211 Md. 216, 126 A.2d 851; Ahern v. Towle, 310 Mass. 695, 39 N.E.2d 561; Citrin v. Tansey, 107 N. J. L. 368, 153 A. 523; City of Fresno v. Dillon, 207 Cal. 714, 279 P. 767.

In accordance with this modern trend as to negotiable instruments and from a sense of justice in these modern times, Commercial National Bank v. Citizen's State Bank, 132 Iowa 706, 109 N.W. 198, and any other similar cases in which we heretofore announced the principle therein adopted, should be overruled.

The case of Fair Loans, Inc. v. John N. Wilkinson, Jr., 211 Md. 216, 126 A.2d 851, holds to the contrary. This is a Maryland opinion decided in 1956. It is an action on a check in the amount of $2100. A company known as Check Guaranty Fund was in the business of guaranteeing checks, for which a charge was made in connection with the purchase of automobiles. Four checks given for automobiles were not paid when presented for payment. Check Guaranty Fund paid them and then proceeded to collect them. Among the checks paid by Fair Loans, Inc., to the automobile company was one drawn on Suburban Trust Company of Silver Spring in the amount of $2100. Payment was stopped on the check, and suit resulted. At the time Fair Loans, Inc., received the check there was no notice of any in-

firmity in the instrument or defect in the title of the persons negotiating it.

This is similar to the case at bar. Mr. Peterson, plaintiff, had no notice of any infirmity in the $1300 check of Mr. Beattie given to Mr. Modjeska.

In the Fair Loans case it was claimed that Check Guaranty Fund parted with nothing in accepting the check of Fair Loans, Inc., and did not alter its position or prejudice itself in anyway; that is to say it did not cancel any part of the debt or extend the time for payment. In the case at bar appellants similarly charged that Peterson did not alter his position or prejudice himself and, therefore, there was no consideration upon which the check could be accepted by Peterson, for its face amount of $1300.

In the Fair Loans case defendant testified that he took the check as part payment of an indebtedness, that he had no knowledge of any defect in it at the time he took it, and that he took it in good faith. The court states at page 226 of 211 Md., page 856 of 126 A.2d: "We find in the testimony no evidence whatever of actual knowledge of any infirmity or defect and no indication of knowledge of any facts which could amount to bad faith under the tests of the statute."

In the case at bar it clearly appears in the evidence that Peterson had no knowledge of any infirmity or defect in connection with the $1300 check of Beattie. The court decided that Fair Loans, Inc. was entitled to judgment against defendant upon the check.

In the case at bar the trial court rightfully decided that Peterson was entitled to judgment against Beattie on the check.

Several other jurisdictions have supported this position of the Maryland court in the following cases: Ahern v. Towle, 310 Mass. 695, 39 N.E.2d 561; Citrin v. Tansey, 107 N. J. L. 368, 153 A. 523; City of Fresno v. Dillon, 207 Cal. 714, 279 P. 767.

We should join these several prominent states in their position that "value" is present as outlined in the statute under the conditions appearing in the case at bar.

In support of the position also see general statements to

the same effect in 10 C. J. S., Bills and Notes, section 321, page 813.

III.   Appellant contends plaintiff is not a good faith purchaser of the $1300 check, because the original contract between plaintiff and Modjeska was usurious.   It may or may not have been.   The burden of proof as to this claim would be upon Beattie and he has not carried the burden.   Plaintiff's testimony is he gave Modjeska a check for $1376 and received the $2200 instrument shown in first paragraph.   Whether the excess above $1376 is commission and interest for the loan, or is something else, the record does not disclose.

This is immaterial for two reasons: 1.   Modjeska's instrument is not void.   If usurious it would only be subject to certain forfeitures as outlined in section 535.5 of the Code.   2.   Only Modjeska can raise the question of usury.   Beattie cannot raise it.   7 Am. Jur., Bills and Notes, page 973;   Burlington Mutual Loan Assn. v. Heider, 55 Iowa 424, 5 N.W. 578;   Sullivan Savings Instn. v. Copeland, 71 Iowa 67, 32 N.W. 95;   Hill v. Rolfsema, 226 Iowa 486, 284 N.W. 376;   Partch v. Krogman, 202 Iowa 524, 210 N.W. 612;   Martin v. Harper, 193 Iowa 259, 186 N.W. 897.

In Martin v. Harper, supra, the court said: "The plaintiff, Martin, had no part in the alleged unlawful agreement for usury.   His subsequent acquirement of an interest in the contract by assignment from Bergman gives him no standing to object to the usury, if any there was.   Generally speaking, the right *to plead usury is personal to the party who agrees to pay it* * * *." (Emphasis ours.)

In the instant case Beattie, who gave the $1300 check, had no right to plead usury in the transaction between plaintiff and Modjeska.

I would affirm.

HAYS, LARSON and THOMPSON, JJ., join in this dissent.